PADOVANO, J.,
dissenting.
The amended complaint creates the impression that the defendant breached a duty of care to the plaintiff but it does so only by making broad statements that are in the nature of conclusions. Because I believe that the plaintiffs claim against the hospital is unsupported by allegations of fact, I respectfully dissent.
The complaint alleges that Nurse O’Quinn was stealing drugs from the hospital, that several hospital employees had reported that he had removed drugs improperly from the Surgical Intensive Care Unit, and that a supervisor counseled him about his job performance. The desired inference is that the hospital knew Nurse O’Quinn was stealing dangerous drugs and made no effort to retrieve the drugs or to prevent further thefts. Yet this inference is one that is created entirely by the juxtaposition of sentences in the complaint. The complaint does not allege that the hospital had received reports that Nurse O’Quinn had been stealing dangerous drugs or even that he had taken any drugs off the premises. What it says is that he had improperly removed the drugs from the Surgical Intensive Care Unit in the hospital. This could signify nothing more than a breach of hospital protocol. Nor does the complaint allege that the counseling session by Nurse O’Quinn’s supervisor *805 had anything to do with the alleged drugs. Again, if the reader gets that impression, it is only because the sentences have been arranged in such a way as to create the impression.
If we consider only the allegations of fact and the inferences fairly arising from those facts, as I believe we should, the complaint fails to allege that the hospital breached a duty to Michelle Herndon. Civil liability based on the allegations made here would, in my view, come dangerously close to a form of strict liability. The hospital does not owe a duty of care to members of the public at large to ensure that they will not be victims of crime. Liability cannot exist in this case merely because the drugs Nurse O’Quinn used to murder Michelle Herndon had been stolen from the hospital. Nor can it exist merely because he was employed there. Yet that is essentially all that is alleged.
I believe that the majority has misapplied the decision in United States v. Stevens, 994 So.2d 1062 (Fla.2008). In that case, the court held that the manufacturer of anthrax owes a duty of care to members of the public to ensure that its product is not intercepted and disseminated. The difference is that anthrax is inherently dangerous. Injury or death can occur merely by coming in contact with the substance. In contrast, the drugs at issue here are harmful only if they are injected into the body. Unlike anthrax, these drugs can only cause injury or death if they are administered negligently or, as in this case, by the intervening criminal act of a third party.
The foreseeability of harm in the anthrax case takes only one step. If a person comes into contact with anthrax, injury or death will occur. To say that the harm was foreseeable in this case, however, would require several additional steps. Assuming the hospital knew that Nurse O’Quinn was stealing the drugs, one would have to assume he was not using them himself, but rather that he was giving them to others against their will. One would also have to assume that the hospital could reasonably predict that he would intentionally harm or kill someone by deliberately giving them an overdose. This, I think, stretches the duty element of negligence too far.
For these reasons, I respectfully dissent.